UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NIELSEN IDAHO TOOL AND ENGINEERING CORP., <br><br> Plaintiff, <br><br> v. <br><br> SCEPTER CORPORATION, <br><br> Defendant. | Case No. 1:11-cv-00058-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant Scepter Corporation's Motion to Dismiss (Dkt. 12). In the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument. Local Rule 7.1(b). Having reviewed the parties submissions and as explained further below, the Court will deny Scepter's Motion to Dismiss.

## BACKGROUND

Plaintiff Nielsen Idaho Tool and Engineering Corp. ("Nielsen Corp.") is an Idaho corporation. Roger B. Nielsen, the sole principal and shareholder of Plaintiff Nielsen

Corp., is a toolmaker and inventor living and working in Meridian, Idaho. Nielsen invented a closeable self-venting spout for portable liquid-carrying containers designed to avoid spillage. The spout has a number of uses, including compliance with U.S. environmental and safety regulations regarding portable gas cans. Nielsen Corp. sued Scepter Corporation, a Canadian company that manufactures fuel cans and other plastic products. Nielsen Corp. alleges in the Complaint that Scepter breached an "Exclusive License to Exploit Invention" agreement by terminating the agreement and failing to pay semi-annual royalty payments.

The negotiation of the licensing agreement occurred over a year and a half period in 2004 and 2005. In 2004, Nielsen Corp., through its Boise, Idaho patent attorney, began contacting various domestic and foreign manufactures, including Scepter, about their interest in licensing Nielsen's spout technology. Scepter indicated an interest in licensing the technology to develop products for sale in the United States that would comply with stringent environmental standards enacted by the California Air Resources Board ("CARB") and adopted by several U.S. states. To ensure that it would acquire rights to Nielsen Corp.'s technology, Scepter asked to engage in exclusive licensing negotiations with Nielsen Corp. On March 28, 2005, at Nielsen Corp.'s request, Scepter signed, scanned, and emailed a formal letter of intent to negotiate exclusively with Nielsen Corp.

Over the next several months of exclusive negotiations, Scepter made numerous inquiries, requests, and demands of Nielsen, Nielsen Corp. and its Idaho attorneys. The

negotiations occurred through telephone calls and emails. Scepter proposed meeting Nielsen in Idaho, but it fell through because of scheduling conflicts.

Before entering into the licensing agreement with Nielsen Corp., Scepter required Nielsen to perform extensive analysis and work in Idaho. Scepter required Nielsen to build a working physical prototype of a spout assembly before it would finalize any agreement with Nielsen Corp. Nielsen spent over 350 hours in Idaho preparing the requested prototype and other supporting materials. Nielsen completed the prototype and presented it to Scepter at a meeting in Canada.

For the next several months, the parties continued to negotiate the terms of the licensing agreement through emails and telephone calls between Idaho and Canada. After the parties volleyed proposed contractual terms and requirements back and forth and agreed on the proposed terms, Nielsen Corp.'s attorneys drafted the final contract. The parties signed the "Exclusive License to Exploit Invention" agreement in October 2005 – Scepter signed on October 6, 2005, and Nielsen signed, in Idaho, on October 19, 2005.

The agreement required Scepter to pay Nielsen Corp. an advance royalty payment of $250,000, which Scepter paid to Nielsen Corp. in Idaho. In addition, Scepter paid $250,000 for the first 5,000,000 units Scepter made using the spout. The licensing agreement further obligated Scepter to make semi-annual royalty payments of $125,000 from January 1, 2009 through the life of the patent, or October 2023. While Scepter only made two such payments before terminating the agreement, Scepter nonetheless paid Nielsen Corp. hundreds of thousands of dollars over a four-year period.

On January 29, 2010, Scepter terminated the licensing agreement after Scepter chose a new product that complied with CARB regulations and was supposedly cheaper to manufacture. The termination of the agreement precipitated this lawsuit. Scepter now seeks a dismissal of the lawsuit on the ground that this Court lacks personal jurisdiction over the company. In support of its motion, Scepter filed the Declaration of Robert S. Torokvei, who states that all Scepter officers, factories, and places of business are located in Canada, and all Scepter employees work in the Canadian facilities. *Torokvei Decl.* ¶ 2, Dkt. 12-3. No Scepter representative traveled to Idaho during the negotiation of the licensing agreement with Nielsen Corp.

## LEGAL STANDARD

In ruling on this motion, the Court must take Nielsen's Corp.'s uncontroverted allegations in the complaint as true and resolve factual disputes in affidavits in its favor. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). However, where Scepter offers evidence in support of its motion, Nielsen Corp. may "not simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *see Data Disk, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (holding that the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"). In that instance, Nielsen Corp. must "come forward with facts, by affidavit or otherwise," in response to [Scepter's] version of the facts. *Amba Mktg. Sys., Inc.*, 551 F.2d at 787.

Nielsen Corp. bears the burden of proving that the Court has personal jurisdiction over Scepter. *Rano v. Sipa Press, Inc.,* 987 F.2d 580 (9th Cir. 1995). If the Court

decides the matter on affidavits and depositions – without an evidentiary hearing – Nielsen Corp. need only establish a *prima facie* showing of jurisdictional facts to withstand a motion to dismiss. *Ballard v. Savage,* 65 F.3d 1495 (9th Cir. 1995). But the issue remains alive for trial where Nielsen Corp. must prove personal jurisdiction by a preponderance of the evidence. *Rano,* 987 F.2d at 587 n. 3.

Where there is no applicable federal statute governing personal jurisdiction, such as in the instant case, the law of the state in which the district court sits applies. *Boschetto*, 539 F.3d at 1015. The Idaho Supreme Court has determined that Idaho's long-arm statute (Idaho Code § 5-514) allows a broader application of personal jurisdiction than permitted under the Due Process Clause of the United States Constitution. *See Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997). Thus the Court need only address whether exercising personal jurisdiction comports with due process.

The Court's exercise of personal jurisdiction is consistent with federal due process only if the defendant "has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

Scepter argues that Nielsen Corp. fails to establish that Scepter had sufficient contacts with Idaho to justify exercising either general or specific jurisdiction over Scepter. Scepter maintains that it has no place of business, no employees, no agents or other representatives in Idaho. It does not maintain a registered agent in Idaho and does

not have a certificate of authority on file with the Secretary of State of Idaho. The Court agrees that Nielsen Corp. has failed to establish that the Court has general jurisdiction over Scepter, but the Court will consider whether specific jurisdiction exists.

## ANALYSIS

To establish that specific jurisdiction exists over Scepter, Nielsen Corp. must first make a prima facie case (1) that Scepter has purposefully availed itself of the benefit of doing business in Idaho, and (2) has shown that the claim against Scepter grows out of or relates to Scepter's forum-related activities. Then the burden shifts to Scepter to make a "compelling case" that the exercise of jurisdiction would be unfair or unreasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).[1]

**1.** *Purposeful Availment*

The first prong of the specific-jurisdiction test includes both purposeful direction and purposeful availment. Purposeful direction generally applies to tort cases, in which a court applies an effects test focusing on the forum where the defendant's actions were felt, whether or not the actions themselves occurred within that forum. *Id.* at 1206 (citing *Schwarzenegger,* 374 F.3d at 803). In contrast, purposeful availment typically applies to contract cases, in which a court examines whether a defendant " 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Id.*

---

[1] Nielsen Corp. concedes that there is no basis upon which the Court can exercise general jurisdiction over Mueller & Smith, and thus the Court's discussion will focus exclusively on the requirements of specific jurisdiction.

(quoting *Schwarzenegger,* 374 F.3d at 802) (alterations in original).  This case involves a contract and therefore a purposeful-availment analysis is appropriate.

The purposeful availment prong of the minimum contacts test requires a "qualitative evaluation of the defendant's contact with the forum state," *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987), in order to determine whether "[Scepter's] conduct and connection with the forum State are such that [Scepter] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  A contract between a resident of the forum state and a non-resident does not automatically establish purposeful availment. *Unocal Corp.,* 248 F.3d at 924 (citing *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 816 n. 9 (9th Cir.1988)).  Rather, prior negotiations, contemplated future consequences, the terms of the contract, and the parties actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum. *Id.* at 479.  This evaluation ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of unilateral activity of the other party or a third person. *Unocal Corp.,* 248 F.3d at 924.

A long-standing working relationship between two corporations may constitute sufficient contact with Idaho such that the purposeful availment prong of the specific jurisdiction test is satisfied.  *Albertson's LLC v. Kleen-Sweep Janitorial Co., Inc.,* No. CV 09-263-S-BLW, 2009 WL 3786290 (D.Idaho Nov.9, 2009).  In *Albertson's,* the two companies entered into a contract in 2003 whereby Kleen-Sweep, a Tennessee corporation, would provide janitorial services to Albertson's, an Idaho corporation, at its

stores in Florida. The Court found the following factors important in finding Idaho could assert specific jurisdiction over Kleen-Sweep: the terms of the agreement created a continuing obligation rather than the sale of a single item; Kleen-Sweep sent invoices and all communications to Idaho; and performance reviews occurred each year in Idaho. *Albertson's, LLC,* 2009 WL 3786290 at *4-5. *See also* [Burger King, 471 U.S. at 475-76](#) (explaining that there is a sliding scale, with random and attenuated contacts at one end, versus those actions which deliberately create a substantial connection or continuing obligations in the forum state).

    Likewise, in this case, Scepter's contacts with Idaho, when considered both qualitatively and quantitatively, suffice to allow the exercise of specific jurisdiction in Idaho. Scepter purposefully entered into a continuing relationship with Nielsen Corp. that lasted several years, and which could have conceivably lasted until 2023. "Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." [Burger King, 471 U.S. at 473](#) (quoting [Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647(1950))](#). Prior to executing the licensing agreement, Scepter and Nielsen Corp. engaged in extensive negotiations over a one-and-half-year period, which required Scepter to make frequent contact with Nielsen Corp. in Idaho. In fact, Scepter requested that Nielsen Corp. negotiate exclusively with Scepter, and Scepter signed a letter of intent to this end. Scepter also requested that Nielsen Corp. create a prototype, and Nielsen Corp spent over 350 hours developing this prototype in

Idaho.  And before terminating the agreement, Scepter sent royalty payments equaling hundreds of thousands of dollars to Nielsen Corp. in Idaho.

Scepter's contacts with Idaho, from which this suit arises, are not "random," "fortuitous," or "attenuated." *Burger King,* 471 U.S. at 475.  By entering into a continuing relationship with Nielsen Corp., an Idaho citizen, Scepter purposefully availed itself of the privileges and protections of doing business in Idaho.  This availment should have alerted Scepter to the possibility – even the likelihood – that it might be haled into court in Idaho to answer complaints related to this extended contractual relationship.

Scepter argues that it has no significant contact with Idaho.  It has no Idaho place of business.  It has no Idaho employees.  Its only contact with Idaho, according to Scepter, is its licensing agreement with Nielsen Corp.  No Scepter representative stepped foot in Idaho when negotiating the agreement, and Scepter's only communications with Nielsen occurred by telephone, email, and letter.

In *Peterson v. Kennedy*, the Ninth Circuit noted that "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"  771 F.2d 1244, 1261 (9th Cir. 1985).   But unlike this case, *Peterson* "dealt with a one shot deal." *Idaho Ry. Supply, Inc. v. Upadhya*, 2010 WL 996477, *6 (D.Idaho 2010).  In addition, this Circuit recognizes that "many transactions take place solely by mail or wire across state lines, obviating the need for physical presence." *Roth,* 942 F.2d at 622 (citation omitted). "Thus, the Court has held that the physical absence of the defendant and the transaction from the forum cannot defeat the exercise of personal jurisdiction." *Id.*  While this is a

very close case, the Court ultimately concludes that Scepter "purposefully availed" itself of the forum by choosing to exclusively negotiate and execute a long-term, on-going contract with Nielsen Corp., an Idaho resident.

**2.    Relatedness**

The second prong of the test asks whether the claim is one which arises out of or relates to the defendant's forum-related activities. "[A] single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Menken v. Emm,* 503 F.3d 1050, 1060 (9th Cir.2007) (citing *Yahoo! Inc.,* 433 F.3d at 1210) (internal quotation marks omitted).

Here, the Court has found that Scepter purposefully availed itself of the privilege of conducting activities in Idaho by entering into the licensing agreement with Nielsen Corp. Because Nielsen Corp. alleges that Scepter breached the Agreement, Nielsen Corp.'s cause of action arises from Scepter's purposeful contact with the forum. *See, e.g., Hirsch v. Blue Cross, Blue Shield of Kan. City,* 800 F.2d 1474, 1480-81 (9th Cir. 1986) (Contract constituted defendant's contacts with forum state for purposes of relatedness element of the limited jurisdiction test.). Accordingly, the second prong of the specific jurisdiction test is also satisfied.

**3.    Fair Play and Substantial Justice**

To determine whether personal jurisdiction comports with fair play and substantial justice, the court must examine a number of factors, including: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 113 (1987). Once minimum contacts are established, a defendant must present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477). In fact, "[o]nly in rare cases ... will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exchange Assurance, Limited v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991)).

The first factor is largely co-extensive with the purposeful availment prong analyzed above. While Scepter's contacts with Idaho appear limited to the licensing agreement and contacts with Nielsen Corp. in order to negotiate and perform the agreement, Scepter has had purposeful continuous contacts with Nielsen Corp., an Idaho corporation, since 2004 and the parties contemplated the relationship lasting through 2023. Thus, the first factor weighs in favor of exercising personal jurisdiction over Scepter.

With respect to the second factor, the fact that Scepter is a Canadian corporation weighs against jurisdiction, but it is not dispositive. *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1115 (9th Cir.2002) (citing *Sinatra v. Nat'l Enquirer,* 854 F.2d 1191, 1199 (9th Cir. 1988)). "[M]odern advances in communications and transportation have

significantly reduced the burden of litigating in another country." *Id.* (quoting *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d at 1199). Moreover, as in *Dole*, "several facts mitigate the burden in this case." *Id.* Scepter entered into the licensing agreement with Nielsen Corp. so that it could comply with U.S. environmental regulations, and it sells its products throughout the fifty states and to the U.S. military. The licensing agreement granted Scepter the right to use Nielsen's invention "throughout the World." *Exclusive License to Exploit Invention*, ¶ 3, Ex. C to Monckton Decl., Dkt. 12-2. Apparently Scepter is also defending another lawsuit in Tennessee, so Scepter should be familiar with the U.S. legal system.

"The third factor, conflict with the sovereignty of a defendant's state, entails an examination of the competing sovereign interests in regulating [Scepter's] behavior." *Dole*, 303 F.3d at 1115. As noted above, the evidence suggests that Scepter has significant ongoing relationship with the United States. And as also noted above, Scepter purportedly is not a stranger to litigation in the United States. While Canada does have some interest in adjudicating this dispute, Scepter is a company that sells products all over the world, including the United States, and this litigation focuses on Scepter's relationship with an Idaho company. Thus, this factor tends to favor Nielsen Corp.

Idaho has a strong interest in providing a forum for its residents and citizens who are injured. Because Nielsen Corp. is solely owned by an Idaho resident, this factor favors Nielsen Corp.

The fifth factor – whether Idaho would be the most efficient forum for resolution of this matter – does not appear to favor either side. Some witnesses will be located in Canada, and some will be located in Idaho.

The sixth factor undoubtedly favors Nielsen Corp. Scepter is a multinational corporation with more resources than Nielsen Corp., so it certainly would be more convenient and efficient for Nielsen Corp. if the case is heard in Idaho rather than in Canada.

Finally, the availability of an alternative forum favors Scepter. This case could be tried in Canada. Weighing all seven factors, however, the Court concludes that Scepter has not met its burden of showing that the exercise of jurisdiction would be unreasonable. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998)(finding that defendant failed to present a compelling case that exercise of jurisdiction in the forum state was unreasonable, even though some factors weighed in defendant's favor). Accordingly, the motion to dismiss for lack of personal jurisdiction is denied.

# ORDER

**IT IS ORDERED that** Defendant Scepter Corporation's Motion to Dismiss (Dkt. 12) is DENIED.



DATED: September 22, 2011

_____
B. Lynn Winmill
Chief Judge
United States District Court